Good morning, Counsel. Good morning, Your Honor. May it please the Court, Spencer Skeen for Appellant Ameriflight, LLC. I request two minutes for rebuttal, please. This appeal concerns a remand order after Ameriflight removed based on minimal diversity jurisdiction pursuant to the Class Action Fairness Act. The District Court made two reversible errors. First, it concluded there was no minimal diversity by ignoring evidence regarding the citizenship of the putative class. Second, it ignored the expressed language of CAFA by measuring diversity of citizenship at the time of filing. I'll start with the most blatant error, which is the failure to consider evidence of the citizenship of the class. The District Court refused to consider evidence that class members resided in 13 different states. At page 9 of its order, the District Court said, and I quote, defendant argues for the first time in its opposition that minimal diversity exists because plaintiff's proposed class includes citizens of states that differ from Ameriflight. Because defendant's removal petition cannot be amended to add substance, defendant's argument is untimely. When did you first raise that question? That's at page 9 of the order, what the court said. We raised it in the petition. In the removal petition? That's correct. So if you look at Appellant Excerpts of Record 107 is the removal petition. Look at paragraph 10, and I'm going to quote from it. Paragraph 10 of the removal petition states, this court has original jurisdiction over the action under CAFA because it is a civil case. I'll wait for the sirens. Because it is a civil case filed as a class action wherein at least one member, if not all of the putative class of plaintiffs, is a citizen of a state different from Ameriflight. Did you identify a single member of the class? We identified a single member of the class. That would be the name plaintiff in our removal petition. But we pled that... Sanchez is going to be a different problem. So let's set Sanchez to one side. Okay. Is there any other member of the class that you identified? Not in the removal petition. In the removal petition we pled that... Did you identify anybody else later on? Yes. Okay. Who did you identify? We identified in one of our supporting declarations that Ameriflight operates in 13 different states, including Puerto Rico, and that the members of the class included citizens of all 13 different states, including Puerto Rico. How do you know they're citizens of those states? Because of their addresses, and that's stated in the... An address doesn't prove citizenship. It proves residency. That's a different thing. That's the records that we have. The defendant's records are the state of residency, which is their address, which is the last known address where we sent checks. This is obviously an airline. They fly around. They were assigned. We have their address, and we also have the... Did you provide their address to the court? No. We have a declaration that states that they resided in all 13 different states, and we also have a declaration that says they were assigned to different airline sites. Essentially, we talked about the fact that their home base was these different locations. But a home base doesn't have anything to do with citizenship. I guess, theoretically, you could be assigned to Nevada and live in Texas. But, again, our records, again, we're looking at our records. I'm sorry. Whose declaration has got the details? I'll tell you. This is Mr. Randau. Yes. With respect to minimal diversity, Randau declaration at paragraph 3 says AmeriFlight is organized. Hold on a second. Yeah, paragraph 4 says it includes... Paragraph 4. ...includes residents. Residents are not citizens. But there's a presumption that residency is citizenship. There's a legal presumption that the state of your residence is your citizenship. It's a legal tenant. So I agree with you that we didn't use the magic language saying it's a citizen, but there is a legal presumption that where you reside is your state of residence when you're an individual. But not state of residence isn't... What case are you relying upon to support the proposition that your expressed state of residence is presumed to be your state of citizenship? What case is that? I don't have that case with me, Your Honor. I do have that case. The place where a person lives is taken to be his domicile until facts are used to establish to the contrary. That's Anderson v. Watts. It's a United States Supreme Court case. 138 U.S. 694. Is that in your brief? Yes. Okay. So there's your presumption. Do you have any cases that say in a remand... Look, if the plaintiff were trying to bring a diversity action and wanted to be in federal court, I don't know that there's any case law that requires them to identify the states of residence of members of the class. It doesn't. So what about under remand law or case law under remand? Yeah. I think where the Court's going with this is the Dart-Cherokee Basin case. That's the U.S. Supreme... That's exactly where I was going. Yeah. And that's where I was headed next. The U.S. Supreme Court established procedural framework for CAF removal in that case, and it said a defendant seeking to remove only has to file a notice containing a short and plain statement of the grounds for removal. This is a pleading standard, and courts must, quote, apply the same liberal rules that are applied to other matters of pleading. This is United States Supreme Court in 2014. It further stated a defendant only needs to present evidence when, quote, the plaintiff contests or the court questions the defendant's allegation. So under Ninth Circuit law, courts construe an opposition to a remand where evidence is submitted as an amendment to the notice of removal so long as the defendant is submitting additional facts or evidence supporting its removal theories. That's the Cone v. Petsmart case and, more recently, the General Dentistry for Kids case. So, again, the starting point is a pleading standard, liberal pleading. If it's contested, we go to an evidentiary standard, and we're allowed to offer evidence in support of what we pled. Now, if that's true and the evidence, as you've offered, the Randau Declaration supported by the Humphreys Declaration, that still doesn't answer Judge Bybee's point that even in those declarations you haven't identified specific people who are residents of specific states other than California. Well, we have at the time. It kind of moves to the time of filing, and I'll leave alone Sanchez for a minute. We have the residents in 13 different states, including Puerto Rico, and the presumption that where they reside is their domicile for citizenship. And we have the Humphreys Declaration, which states there were 151 employees that worked in other states other than California, and that was the Humphreys Declaration at paragraphs 3 and 6, that of the 519 pilots, essentially 151 were from other states other than California. So based on those two declarations, we believe mineral diversity was met. Counsel, the chances of you being able to prove in some ultimate platonic sense diversity approaches 100% in this case. Yes. But you didn't identify a single name. You didn't attach records from HR and say, here's the names of a number of members that we think are members of this class, and here is our records on their state of domicile, and therefore we are entitled to the presumption to never gave a single name other than Rodriguez. That's correct. We gave you data, a summary of data, based on an affidavit from someone in HR and from, was it Randall and Humphreys, that stated he reviewed the residencies and the addresses, and he's telling you what it says. But you're right, he didn't say, Joey lives at 134 West East Street. Did not do that. And there's privacy reasons that you don't identify people's addresses, but... But you could have been redacted. Yeah, yeah. And you could have given us a list that said, here's names, here's Mr. Smith, and he lives in Texas. Here's Mr. Jones, and he lives in Oklahoma. Yeah, I understand that. I don't disagree with Your Honor in that regard. I think that... The question is, is it fatal, and what is the case law? I don't think it's fatal. I think, again, first of all, the removal petition was pleading. We offered the evidence. The question, I think Judge Babby's question is whether the evidence is specific enough or meets whatever test is required. Well, let me tell you what happened in the district court. The district court didn't consider it. So the district court didn't consider it. So... The district court didn't... The only affidavit that the district court considered was Mr. Bird's. That's correct. He didn't mention... The district judge didn't mention Randauer, Humphrey. That's correct. And that's, I think, in part, it talked about the time of filing rule, and there was a great discussion of that, and I'd like to move to that in a minute here. But, counsel, you don't dispute that there was no minimal diversity when the complaint was filed. You don't dispute that, do you? I don't. Well, I don't believe there was. I don't think it was readily apparent from the face of the complaint. And at that point in time, as we know, Ameriflight was a resident of California. The class, as pled, dealt with work performed in California. Theoretically, I guess, that would still include these other people from other states. But what we had, I guess, the reason there was no CAFA triggered was the complaint alleged at paragraph 2 that the amount in controversy was less than $5 million. And so we were stuck, for at least that point in time, with the allegation from the plaintiff that the amount in controversy was less than $5 million. It wasn't until essentially two years later that, in substantial discovery, once we filed a ceremony judgment motion and once the class certification motion was tentatively ruled upon, that for the first time in open court, we were told plaintiff would seek $7 to $10 million at time of trial. There's also two different issues. The minimal diversity issue, I was addressing that. Yeah. Yeah, at the time of filing, it was named plaintiff, California defendant. We moved our corporate offices to Texas at a later point. So the class theoretically, I guess, still included the putative class members from other states. I don't want to deny that because it did. But the named plaintiff and the named defendant were both from California at that point. But the amount in controversy was pled to be below $5 million. So what triggered our inquiry was the hearing on the class certification motion where there was a statement made for the first time that at trial they would seek $7 to $10 million. Let me please move to the time of filing. Well, I want to make sure I get to that. The second error that the court committed was it said, and I quote, pursuant to the time of filing rule, both plaintiff and defendant were citizens of California at the time plaintiff filed the instant lawsuit. Looking at the citizenship at the time of filing violated the plain language of 1332d7, which states the citizenship of plaintiff and the putative class members are determined as of the date of filing of the complaint or amended complaint, or if the case stated by the initial pleading is not subject to federal jurisdiction, as of the date of service by plaintiffs of the amended pleading, motion, or other paper indicating the existence of federal jurisdiction. Which is the exact same language in 1446 or whatever it is, and that's always been held to be a time of filing rule. In 1446 it doesn't state that you shall determine the citizenship of the plaintiff and putative class. 1337d speaks specifically to the time of determining the citizenship of plaintiff and the putative class. I believe what you're talking about in 1446 is when should you remove. The timing of removal, this deals with specifically determining the citizenship. CAFA rejects the time of filing rule in cases where the basis for removal arrives later in the action. So the district court should have examined citizenship at the time plaintiff indicated he would seek 7 to 10 million at trial because that was the event that indicated the existence of federal jurisdiction. At that point in time, we had diversity between the named plaintiff, who was a citizen of California, and the defendant, who was a citizen of Nevada and Texas. So, and I'm going to reserve some time here, but I do want to state, why didn't 1332d-7 tell courts to measure defendant's citizenship at the time of plaintiff's citizenship? Because I know that's going to come up. 1332d-7 says you measure the plaintiff's citizenship and the class at the time this later event, right? Well, diversity is a relative concept. A party to a lawsuit is not diverse from itself. Diversity of citizenship requires a comparison of plaintiffs and defendants at the same time period. It's simple math. The plaintiff plus the defendant equals diversity. They're never measured at different times. This has been the rule for 100 years. There's not a single case cited by the district court or the plaintiff that analyzes diversity at different points in time. So what did the district court do here? It measured plaintiff and defendant's citizenship at the same time, at the time of filing, even though 1332d-7 says you have to measure plaintiff's citizenship at a later date, because the basis for removal jurisdiction didn't exist at the time of the initial pleading. So it essentially knew it couldn't pick different time periods, and it just chose to ignore 1332d-7, which states the time of filing rule does not apply when diversity jurisdiction arises later. Thank you. I'll reserve time. Good morning, Your Honor. I'm Elisa Martin, and I'm appearing on behalf of David Sanchez from the firm A. Martin Law. So I want to start off addressing, since counsel left off talking about Section 1332d-7, and I think we have, both of us have, a fundamental disagreement on what we think that provision's actually saying. I look at that provision, and I think it codifies the time of filing rule and the limited exception to that rule, which was articulated by the Supreme Court. And the Supreme Court specifically said in Grouper v. Datafox that the only time it will divert from that rule is if there is a change of party in the case, and that's a change of party that's initiated by plaintiff, either amending, filing a complaint, amend a complaint, or doing some sort of affirmative action where it's adding a party to the case or subtracting the party. Other than that, the time of filing rule always applies. So in this case, opposing counsel says that the operative event for the amount in controversy was when there was a representation by counsel of the amount of damages that were played. Is that your understanding of what the recipient event was? That's my understanding of what. They're arguing that that is the event, but I don't believe that event still changes. When you're looking to determine people's citizenship, the time of filing rule will still apply, and you've got to look at what their citizenship was at the time the case was initially filed. Can I ask you this, though, before we get there? Do you think that was an amended pleading, motion, or other paper, the representation by counsel? No, I do not. And if you look at 1332d7, it specifically says it has to be as of the date something served by plaintiffs of an amended pleading, motion, or other paper. And then to seek clarification on exactly what the statute meant by that, the legislature of history that speaks to this issue, and that is in Plaintiff's Appendix, page 44, it says specifically, the only exception is where the original complaint does not indicate the existence of federal jurisdiction and plaintiffs later serve paper, particularly an amended complaint, that creates such citizenship or makes it evident. So even when you look at the legislative history, they're saying plaintiffs have to file something that puts into dispute the citizenship. So a statement in court regarding the amount of controversy is not impacting citizenship. It's not adding a party to the case. It's not subtracting a party to the case. It's the same parties. So I think if you look at that, and again, that's why my argument is 1332, that just codifies the time of filing rule and its exception, and the reason why I think this particular provision was added is because it becomes the question, what's unusual about class actions is you have named parties, and then you have unnamed parties. And so I think it was just filling in the blank on how do you determine the citizenship of unnamed parties, and it was basically saying you still apply the same general jurisdictional principles, which would be the time of filing rule. And again, to go back to legislative history, they specifically say that in the history. Even if you look at Plaintiff's Appendix, page 70, in the legislative report, they said, well-established law exists to resolve these questions, and S-5, which is the Senate bill for CAFA, does not change or even complicate the answers to these questions. In short, the rules of the road on such issues are already established, and S-5 does not change them. So I think it's clear that when you look back, if there's, you know, for guidance, it's clear. They wanted the time of filing rule to apply, and even if you look at legislative history, they even provide examples showing the application of the time of filing rule. They even discuss the Supreme Court cases that lay out the time of filing rule. So I think, you know, defendants' interpretation that somehow this provision, 1332, is somehow abrogating or saying the time of filing rule does not apply or somehow creates an unfair advantage to defendants, I think it's furthest from the truth. I actually think this provision provides further protections from the defendant, and by that I mean by articulating that unnamed representatives are also subject to the time of filing rule. That would preclude plaintiffs, for instance, I couldn't, for example, file a complaint and have it seeking to represent California employees, wait till after defendant's 30-day time frame to seek remand, and then, you know, on day 35 amend my complaint and say, no, I'm also seeking to represent pilots that worked in New York as well. That's what that time of filing rule is. If I made that amendment and I'm bringing in now a whole bunch of pilots that work in New York, that's going to be bringing a different party to it and then you would reassess it at that time. So that provision actually is to protect defendant from plaintiffs doing that. But again, I think that just codifies the general jurisdictional principle that has been around for two centuries. I also want to address, defendant said that the district court precluded it from presenting evidence and failed to consider evidence that it believes establishes its minimal jurisdiction requirement. And I want to address, the one thing that defendant fails to address and it's with respect to Mr. Humphrey's declaration. When they were supposed to oppose the motion for remand, when they filed their opposition, they concurrently filed a motion, an ex parte motion, and they asked the court in that motion, they said that they did not have sufficient time to get evidence to support its amount of controversy and that it needed additional time to do that. Specifically, they said, and I quote, on December 14th, the court unexpectedly expedited the hearing date on plaintiff's motion to remand in order for Merrifleet to file its opposition by December 30th. Unfortunately, this prejudiced Merrifleet's ability to submit evidence with its opposition refuting plaintiff's claim that the amount of controversy was less than $5 million. Merrifleet brings a present application requesting the court to extend time for it to submit such evidence. He goes on to say, despite best efforts, Merrifleet did not have adequate time or manpower to pull amount in controversy evidence. The court thereafter granted their ex parte motion, which is why the court specifically said, the court grants defendant's ex parte motion. Defendant must submit amount in controversy evidence on or before January 17th. In response to that, on January 17th, they submitted the declaration of Mr. Humphreys that included, particularly, which defendants are stressing, paragraphs three and four, and that's where he basically says Merrifleet employs approximately 368 pilots who are assigned to bases in California and then in paragraph six says, during the class period, approximately 519 individuals attended Merrifleet's indoctrination training. So from that statement, number one, those two paragraphs were submitted in connection with establishing the amount of controversy. But why is it limited to that? The judge didn't limit them to that. Well, I'm answering the question because they're saying the judge failed to consider evidence that they presented on the minimum diversity issue, but they specifically went to the court and said, I only need additional time to get evidence on the amount of controversy. But even if you consider that evidence, I don't think that carries the day for them. I think, basically, those two statements together, what they're basically saying is, look, you have about 519 people that's doing training in California and less than 368 were assigned to California, so that's roughly 150 people, and they're assuming those 150 people must be working elsewhere, residing, citizens elsewhere. There can be other explanations for that. But then they also have the Rando affidavit or declaration that was submitted on the same day, and they list a dozen states, I haven't counted, where they operate crew bases other than California, and Rando says most of AmeriFlight's pilots reside in the same state as their assigned crew base based upon AmeriFlight address records. The putative class includes residents of every place AmeriFlight operates. So if you take those two declarations together, they are saying that there are 150 people or some such number that aren't working out of California and reside elsewhere. Whether that's sufficient is another question, but those things were before the judge, and he didn't talk about them. Well, I would also like to point out that I think that paragraph right there in that declaration was actually submitted a couple weeks prior to Humphrey's declaration, but also that paragraph I don't think really establishes much of anything, because we don't even know what time frame they're assessing where these plaintiffs, at this time, assuming this is saying they are citizens of these different states, which they don't make that direct statement and they have the records to easily do so, we don't even know when they assessed it, because under the time of filing rule, you've got to look at where everybody were citizens and located at the time the case was filed. We don't know if he determined this information, was this based upon where people were located when the case was filed? Was this where they were located right after the class certification hearing where they said they learned a removal basis? Was this determined before they sought removal or after they sought removal? There's not sufficient information, even in the declaration, to make that determination, so I think even if you look at all these statements and the court considered it, I still don't think that meets the burden approved for them to establish where these people are, and I think it ignores also the time of filing rule, and I think if you look at the time of filing rule and take into consideration the legislative history, which the other side did not address at all in their papers, it's saying what the trigger for re-evaluating where people's citizenship is is when plaintiffs file something that puts citizenship in dispute, which is basically the exception to the time of filing rule, and that would be if I'm adding a party or subtracting, so if I amended my complaint to add a defendant who was in New York, or if I added a plaintiff who was living elsewhere, then that would trigger re-evaluating the citizenship, and one of the reasons that the courts have this rule is so the courts don't have to keep on repeatedly re-evaluating where people are living, and I also think that the overall picture here and why the courts rely on the time of filing rule is because the purpose of CAFA is to protect out-of-state defendants from being subjected to local bias or local prejudiceness or having a national matter be limited and only heard by a local court. Here, when the case was filed, they concede, AmeriFlight was a California citizen. This is regarding pilots that trained and worked in California. So, you know, if they picked up and decide to move after, that doesn't create their unilateral decision to move, doesn't create somehow the concerns that CAFA was seeking to protect. Just because they moved to Texas doesn't all of a sudden make this case an interstate case involving national issues. Just because they moved to Texas doesn't mean all of a sudden they're going to be subjected to local bias, particularly since they continue to litigate well after at some point when they moved, although nowhere in the record does it state exactly when they changed citizenship. In fact, the court wasn't aware. No one was aware. So I don't, you know, so I think when you're looking at the overall purpose of CAFA anyway, I think the time of filing rule protects and helps facilitate the policy behind CAFA. I don't think it in any way impedes that policy. Unless your honors have any other questions for me, I believe, you know, I'm willing to submit all my papers, so I'm not just restating what I have laid out there, but if you have any more questions, I'm more than happy to answer them. It appears not. Thank you, counsel. Okay. You have 20 seconds. Three points, your honors. Judge Rawlinson asked about the transcript. Barrera says a hearing transcript is other paper that triggers CAFA removal. Jordan, which is a Ninth Circuit case, said an interrogatory response. In other words, you can't plead something and then argue something different if it comes out later that you're seeking more than $5 million, it triggers it. I want to talk about Kauffman. In Kauffman, the district court, everybody cited it, including the district court. The Third Circuit found the district court erred when it applied the time of filing rule to defendant citizenship under CAFA, under the local controversy exception. It stated 1332d7, which is our statute here, allows the court to evaluate citizenship of defendant after the time of filing. It says citizenship may be determined even after the time of filing. It quoted 1332d7 verbatim. Then it evaluated the citizenship of the defendants in the remand motion. And it says, quote, In a similar vein, we conclude the local controversy exception requires consideration of defendants presently in the action. Counsel, that's a Third Circuit case. It is a Third Circuit case, your honor. It seems to me that Broadway-Grill, our case, does not follow that same line of thinking. Broadway-Grill stated that minimal diversity should be determined at the time of removal. They've tried to distinguish it in their brief. We think that... Well, it also said as of the time of the operative complaint as well. But it wasn't dealing with a CAFA. It wasn't dealing with a 1332d7 issue where we're talking about minimal diversity of the citizenship. That language is in there. It is in there. I don't think it was dealing with a d7 citizenship issue. All right. I did want to speak to the legislative history. One brief point. Your honors, both Ninth Circuit decision in Abrego and the Tanna case say that legislative history is accorded minimal, if any, value because it was done after the enactment of CAFA. All right. Thank you, counsel. Thank you so much, your honors. Thank you to both counsels for your helpful arguments in this case. The case just argued is submitted for decision by the court. Thank you.
judges: Rawlinson, Bybee, Friedman